IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

H. TIMOTHY S. KREGER,

          Plaintiff,                                  05cv0789

     v.                                      **Electronically Filed**

BALDWIN BOROUGH,

          Defendant.

**Memorandum Opinion and Order**

**February 23, 2006**

    **I.**       **Introduction and Background**

On February 7, 2006, this Court entered an order denying the motion of defendant Borough of Baldwin ("the Borough") for summary judgment on plaintiff H. Timothy S. Kreger's complaint alleging discrimination in failing to hire him for a police officer position, under the Americans with Disabilities Act (ADA), and indicated that an opinion explaining the Court's reasoning would follow in time to assist the parties in their final trial preparations.

The Court finds that plaintiff cannot demonstrate a *prima facie* case with regard to his ADA claim of "regarded as" disability in the context of alcoholism, and to that extent, the Court will grant summary judgment in favor of defendant. The Court further finds that plaintiff has offered sufficient evidence from which he can establish a *prima facie* case of discrimination based upon his left hand birth defect, and that, even though defendant has proffered adequate legitimate business reasons for its failure to hire plaintiff, plaintiff has offered sufficient evidence that those reasons may have been pretextual to permit this claim to reach the jury.  As set forth below, the Court will grant summary judgment in defendant's favor with regard to

plaintiff's ADA claim based on the Borough's perceived alcoholism, but will deny summary judgment with regard to his left hand disfigurement.

Plaintiff suffers from a birth defect in which two fingers are missing from his left hand, and he had been treated for alcoholism. In February 2000, plaintiff applied for the position of police officer with the Borough. Following written aptitude and physical agility testing, both of which plaintiff passed, and an interview with the Civil Service Commission for the Borough of Baldwin ("the CSC"), an advisory panel created pursuant to Pennsylvania's Borough Code, 53 P.S. § 46181 and 46184, to review and certify applicants on behalf of Borough Council, Plaintiff was ranked second among six remaining applicants. However, on May 24, 2000, through its usual process of selection by which the Borough picked one applicant from the top three ranked applicants, and then the next qualified applicant moved up into the selection pool, plaintiff was not hired.

Instead, the Borough hired Jonathon Milkos, Josh Brasso and Robert Pagne, at least two of whom had substantially less work experience as a police officer than did plaintiff, to fill the two slots. Plaintiff alleges that during the CSC interviewing phase, the Chairman of the CSC, Mark Sukevich, made disparaging comments about plaintiff being a "cripple" and a "drunk," that he passed these comments along to then Chief of Police Robert Kelly, who advised the Borough regarding hiring its police officers, and at least one other Borough Council member, and that, as a result of the negative comments and the perception of him as disabled on account of his disfigured hand and alcoholism, the Borough did not hire plaintiff to fill one of the three police officer positions.

The Borough counters that plaintiff's alleged disabilities did not affect its decision, that it hired according to its usual selection process, and that the reasons it did not hire plaintiff was

because he performed poorly during his interview with Borough Council on May 24, 2000, Chief Kelly recommended other candidates be hired, and that the three hired candidates were a 'better fit" for the Borough. The Borough further argues that the negative comments made by a CSC member cannot be attributed to it as the CSC merely certified and ranked the qualified applicants, and did not actually make decisions or advise the Borough on which of the applicants it should choose.

The parties stipulate that the Borough is an employer within the meaning of the ADA, that plaintiff "has a disability, as defined by the ADA, with respect to his disfigured left hand," and that plaintiff "was qualified for police officer position and able to perform the essential functions of that job." Joint Stipulations, at ¶¶ 1, 2, 4 (Document No. 25).

## II.     Standard of Review

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001)

(court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

### III.    Americans with Disabilities Act

The familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies in an ADA case.  *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667-68 (3d Cir. 1999).  This Court cannot improve on the summary of the *McDonnell Douglas* standards, as set forth in detail by the United States Court of Appeals for the Third Circuit in *Olson v. General Elec. Aerospace,* 101 F.3d 947, 951 (3d Cir. 1996), as follows:

> It is now axiomatic that the familiar analytical framework first pronounced in *McDonnell Douglas Corp. v. Green,* . . . for resolution of suits brought under Title VII, also guides an analysis of claims brought under the ADA.  *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157 (3d Cir.1995).   Accordingly, Olson had the initial burden of establishing a *prima facie* case of unlawful discrimination. To do so he had to establish that (1) he belongs to a protected category;  (2) he applied for and was qualified for a job for which the employer was seeking applicants;  (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants.  *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996) (en banc); *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994) (discussing elements in a case of failure to hire or promote under Title VII).   In *McDonnell Douglas,* the court noted that "the facts necessarily will vary in Title VII cases, and the specification . . . of the *prima facie* proof required . . . is not necessarily applicable in every respect to different factual situations."  411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. . . .  If the plaintiff succeeds in establishing a *prima facie* case, the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection. *Id.*  Once the employer articulates a legitimate reason for the unfavorable employment decision, the plaintiff must show by a preponderance of the evidence that the employer's proffered explanation was pretextual. *Id.*

In order to defeat a summary judgment motion after the defendant answers plaintiff's *prima facie* case with legitimate, nondiscriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons;  or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  *Id.* at 764.  The plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765 (internal citations, quotations and brackets omitted).  Once the plaintiff has pointed to some evidence which sufficiently discredits the employer's proffered reasons, plaintiff need not "also come forward with additional evidence of discrimination beyond his or her *prima facie* case." *Id.* at 764.  Rather, the factfinder may consider the elements of plaintiff's *prima facie* case along with the rejection of the employer's explanation and conclude that illegal discrimination is more likely than not the true reason for the challenged employment action.  "It is the jury's determination that the reason given was pretextual together with the evidence that supported the *prima facie* case that will sustain a finding of intentional discrimination ..." *Sheridan,* 100 F.3d at 1071.  The factfinder is not, however, compelled to so find, as the plaintiff always has the burden of proof.  *Id.* at 763.

However, ***before the burden-shifting can even begin, Olson must show that he is a member of a protected class***.

*Olson*, 101 F.3d at 951-52 (certain emphasis added).

To establish a *prima facie* case under the ADA the plaintiff must show that he is (1) disabled within the meaning of the ADA, (2) can perform essential functions of his job with or without reasonable accommodations, and (3) suffered an adverse employment action as a result of his discrimination based on his disability.  *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir. 2000); *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998); *Bushkirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002).  An individual can show that he is disabled within the meaning

6

of the ADA by showing that he has (1) a physical or mental impairment that substantially limits one or more of his major life activities, (2) a record of such an impairment, or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2).  A person is "regarded as" having a disability if the person:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999), citing with approval EEOC Regulations, 29 C.F.R. § 1630.2(l) (1996).

A.   Alcoholism.  With respect to plaintiff's admitted former problems with alcohol, plaintiff claims that he was "regarded as" disabled because of "alcoholism" for which he currently continues to attend AA meetings.  The United States Court of Appeals for the Third Circuit has not spoken definitively on the status of alcoholism as a disability under the ADA. *See Knepp v. Overhead Door Corp.*, 2005 WL 2030469 (M.D.Pa. 2005), citing *Salley v. Circuit City Stores, Inc.*, 160 F.3d 977, 981 (3d Cir.1998); *Smith v. Davis*, 248 F.3d 249, 251 (3d Cir. 2001) ("An employer is not obligated to accommodate absenteeism attributable to alcoholism."); *Hinnershitz v. Ortep of Pa., Inc.*, 1998 WL 962096 (E.D.Pa. 1998) (alcoholism may only rise to the level of a disability where it substantially limits a major life activity), *aff'd*, 203 F.3d 817 (3d Cir. 1999).

Whatever the alleged impairment or disabling condition, however, "regarded as" disability requires that the employer perceive not just that plaintiff has the condition or impairment, but that it *substantially limits a major life activity.  Rinehimer v. Cemcolift, Inc.*, 292

7

F.3d 375, 381 (3d Cir. 2002).  There is *no evidence* on this summary judgment record from which a reasonable fact finder could conclude that the Borough perceived plaintiff as suffering from an alcohol related impairment that substantially limits any life activities, let alone major ones.  The mere fact that the CSC Chairman may have referred to plaintiff as a "drunk" and that the Chief of Police and some Borough Council members heard that remark, although characterized by plaintiff as a "plethora of evidence," does not remotely suggest that the Borough perceived that condition as "substantially limiting a major life activity."  Indeed, the Borough was aware that plaintiff had worked as a police officer since 1990 and passed the physical agility tests, and there is nothing on the record from which the jury might infer that, despite his uninterrupted work history, the Borough nevertheless perceived plaintiff as substantially unable to perform any major life activities because he may have been, at one time, a "drunk."

Because plaintiff cannot meet his threshold burden of showing "regarded as" disability with regard to alcoholism, the Court **GRANTS** summary judgment in defendant's favor as to this claim.

B.      Hand Birth Defect.  Defendant stipulates that plaintiff is disabled within the meaning of the ADA with regard to the birth defect of his left hand, and thus he is a member of the protected class vis a vis that birth defect, as to which there exist genuine issues of material fact as to whether the reasons advanced by the Borough for not hiring plaintiff in May 2000.

Plaintiff easily meets his *prima facie* burden here (since defendant concedes the disability and that plaintiff is qualified, plaintiff was rejected, and three other candidates without disabilities were hired), which shifts the burden to the Borough. In turn, the Borough advances reasonable, although quite subjective and not overly convincing, reasons why it did not hire

8

plaintiff, namely, that he interviewed poorly, not making much eye contact, and that the hired candidates, although less qualified on paper, were a "better fit."  Sufficient reasons having been proffered to put the ball back in plaintiff's court, plaintiff raises enough doubts about the reasons given to make discrimination in hiring a jury question, including that the reasons now advanced by the Borough were not advanced as reasons until five years had passed, despite being requested by the EEOC to supply its reasons, and that the deposition testimony supporting these reasons is not entirely consistent and is contradicted by one or more Borough council members at the time.  Coupled with the "cripple" remark and plaintiff's *prima facie* case, this Court cannot say, as a matter of law, that a jury would be unable to find pretext in the Borough's stated reasons for not hiring plaintiff.

For the foregoing reasons, the Court has **DENIED** summary judgment on plaintiff's ADA claim with regard to his disfigured left hand.

The Court will prepare its final jury instructions and verdict slip in accordance with this opinion, and will deliver said instructions to counsel electronically on or before the close of business, February 24, 2006.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All counsel of record as listed below

Samuel J. Cordes, Esquire
Patricia A. Monahan, Esquire

9